[Civ. No. 17253.   First Dist., Div. Two.   Oct. 28, 1957.]

GEORGE W. LEWIS et al. (a Partnership), Appellants, v. HINMAN-BALL AND BONNER (a Partnership) et al., Respondents.

Howard B. Crittenden, Jr., for Appellants.

Johnson & Stanton, Partridge, O'Connell & Partridge and Thelen, Marrin, Johnson & Bridges for Respondents.

DRAPER, J.—This action arises out of a subcontract between plaintiff partners and defendant Harms Bros., a partnership. Late in 1948, defendant Harms Bros. and two other general contractors formed a joint venture to bid upon excavation and grading work for an addition to Los Angeles International Airport. The contract was awarded to these bidders. Pursuant to the joint venture agreement, one-third of the work was subcontracted to defendant Harms Bros. By subcontract dated January 31, 1949 (although work actually began about January 13, 1949), Harms Bros. in turn subcontracted its work to plaintiff partners. As a condition to award of the subcontract to plaintiffs, Harms required that plaintiffs place workmen's compensation insurance through Harms' broker, defendant Hinman-Ball and Bonner, a partnership. A principal fact issue in this case is whether such insurance was required to be so placed for all plaintiffs' jobs in the State of California, or only for the Los Angeles airport job. On January 10, 1949, under authorization by plaintiffs, Hinman-Ball and Bonner secured from defendants Argonaut Insurance Exchange and Argonaut

Underwriters, Inc., a workmen's compensation policy covering only plaintiffs' operations on the Los Angeles airport job. This policy was not delivered to plaintiffs, but was held by Hinman-Ball and Bonner. The trial court found, on substantial evidence, that the reason for nondelivery was the broker's uncertainty as to whether employees on the Los Angeles airport job were to be carried on the payroll of plaintiffs or that of Harms. They were in fact carried on Harms' payroll and, the court found, were insured under Harms' own policy. On April 25, 1949, at the request of Hinman-Ball and Bonner, the Argonaut defendants cancelled plaintiffs' policy "flat," i.e., as of the date of its issuance.

Before any negotiations for the Los Angeles job, plaintiffs had in force a workmen's compensation policy issued by another insurer through plaintiffs' own San Francisco brokers, covering all operations of plaintiffs in the State of California. This policy, by its terms, expired February 10, 1949. Plaintiffs did not renew it. On February 23, 1949, one Amos Watkins was injured while operating equipment owned by plaintiffs upon construction work being done by Morrison-Knudsen Company, Inc., a general contractor, at the San Francisco International Airport. There was no connection between this San Francisco job of Morrison-Knudsen and the Los Angeles job of Harms. Watkins sued the present plaintiffs alleging that he was their employee at the time of his injury and that his employers had no workmen's compensation insurance in force. After verdict and the granting of a new trial, that action against plaintiffs was settled for $10,000. The record contains no affirmative evidence as to what portion of this sum was paid by plaintiffs.

Plaintiffs' present action is in five counts. The first alleges a conspiracy among all defendants to defraud plaintiffs by leading them to believe that they were covered by compensation insurance, thus causing them damage to the extent of plaintiffs' portion of the Watkins settlement, as well as undertermined losses by reason of lack of compensation insurance upon the Los Angeles job. The second count is against the two Argonaut defendants, upon the theory that their policy remained in force and covered all plaintiffs' operations, rather than merely the Los Angeles job. The third alleges negligence and fraud of Hinman-Ball and Bonner in failing to insure plaintiffs against the San Francisco loss. The fourth alleges that defendant Harms deducted, from payments due plaintiffs, amounts claimed to be due as

premiums upon the workmen's compensation policy issued to plaintiffs, that the policy in fact was cancelled and no payments were made thereon, thus entitling plaintiffs to return of the sums so deducted. The fifth and final cause of action is on the common count for the same sum of money.

At the close of plaintiffs' case, nonsuit was ordered as to the second cause of action. The case was fully tried as to the remaining counts, and, upon detailed findings and conclusions, judgment was entered in favor of all defendants. Plaintiffs' motion for new trial was denied. They appeal from the judgment, and purport to appeal from the order denying new trial.

The trial court found the facts stated above and further found that: respondent Harms Bros. carried all the Los Angeles airport job employees on its payroll and paid them by its checks; Harms required appellants to place their compensation insurance on the Los Angeles airport job with the Argonaut respondents through respondent Hinman-Ball and Bonner, but this requirement did not extend to any other insurance of appellants; appellants authorized Hinman to secure for them, from Argonaut, workmen's compensation insurance upon the Los Angeles job only, and never sought insurance upon any other job from any respondent; Argonaut issued a policy to appellants specifically limited to the Los Angeles job; no word or act of respondents led appellants to permit other insurance to lapse, or to fail to renew it. The court specifically found that respondent Hinman informed appellants that the only insurance it would place for them was that relating to the Harms Bros. job. Appellants were notified of the April 25, 1949, cancellation of the Argonaut workmen's compensation policy on the Los Angeles job. This cancellation was made in good faith for the purpose of avoiding duplicate coverage, it being the view of Hinman and Argonaut that the Harms policy with Argonaut covered "all losses caused to employees" on the Los Angeles job. In fact, workmen's compensation losses did occur on the Los Angeles job, and were fully paid and discharged by Argonaut. No other claims have been made against appellants arising out of employment of any employee on the Los Angeles job, whether as employees of Harms or of appellants, and whether based on the right to workmen's compensation or upon any claimed failure to provide workmen's compensation insurance. The court also found that all respondents at all times acted in

good faith, that none were negligent, and that none acted, either individually or in concert, with any intent to mislead or defraud appellants.

Appellants first contend that the findings are not supported by the evidence. It would serve no purpose to detail the record here. It is no part of the function of an appellate court to weigh the evidence. The trial court resolves conflicts. We determine only whether there is substantial evidence to support the findings, and we must indulge all reasonable inferences to uphold them. (*Holmberg* v. *Marsden,* 39 Cal.2d 592 [248 P.2d 417].) We have reviewed the record carefully and find in it substantial evidence to support each finding attacked by appellants.

Appellants next argue that Harms' workmen's compensation insurance could not in law inure to appellants' benefit, thus leaving appellants liable as uninsured employers. Since they relied upon respondents for coverage, they assert that they are entitled to recovery for all damage so sustained. Ignoring the findings against them, they claim recovery on this theory of the sum paid to settle Watkins' claim on the San Francisco job. The argument cannot avail appellants. Under the findings, they neither ordered nor received insurance on any job except that in Los Angeles, and respondents therefore have no responsibility for coverage of the San Francisco work. As to the Los Angeles job, defendants did order, and respondents Hinman and Argonaut undertook to provide, compensation insurance. The expedient chosen was to place all employees upon that job on the Harms payroll, and to insure them as employees of Harms. Appellants apparently argue that, to the extent that they exercised control or direction of these employees, they were themselves employers and were not covered by the insurance of Harms. Thus, they contend, they were subject to civil action by injured employees for amounts in excess of compensation benefits. (Lab. Code, § 3706.) We do not pass upon the effectiveness of the purported compensation coverage afforded to appellants, but point out that they have established no damage by reason of the claimed lack of coverage in Los Angeles. The trial court found that no civil action has been brought against appellants, and that all compensation claims arising from that job have been fully paid and discharged by Argonaut. It also found that appellants knew, shortly after April 25, 1949, that there was no compensation policy directly covering them. The work was completed before March 3, 1950. ██ The

statute of limitations upon an action under Labor Code, section 3706, appears to be no more than three years. (*Hall v. Copco Pacific, Inc.*, 224 F.2d 884.) ▮ Appellants suggest the possibility that a cause of action may arise, such as one based upon the incurring of silicosis, long after termination of the employment wherein the injury was suffered. This bare possibility is too remote for a present award of damages, the only relief here sought by appellants.

Appellants assign error in the order granting a nonsuit as to the second cause of action. That count is based upon the claim that Argonaut issued a workmen's compensation policy covering appellants as to all their operations in the state, which remained in effect when Watkins was injured on the San Francisco job, and that Argonaut was therefore obligated to discharge Watkins' claim. There was some evidence possibly warranting the inference that the endorsement limiting the Argonaut policy to the Los Angeles job was added after issuance of the policy. Also, appellant Queen did testify that he had asked for, and Hinman had agreed to furnish, coverage of appellants' operations statewide. In view of the evidence as to the relationships of Hinman and Argonaut, it could be argued, as against the motion for nonsuit, that appellants had the right to rely upon the presumption that the policy issued was that which they ordered. (*California Reclamation Co. v. New Zealand Ins. Co.*, 23 Cal.App. 611 [138 P. 960].) Disregarding all conflicting evidence, and indulging all inferences in favor of plaintiffs, as required upon motion for nonsuit, either of these items was enough to require denial of the motion. ▮ However, assuming error in the granting of the nonsuit, there is no prejudice to appellants. On the motion for nonsuit, the trial court could not weigh the evidence. But these two issues were fully tried upon the other causes of action. Thereupon the trial court did exercise its admitted right to resolve conflicts in the evidence and to draw reasonable inferences therefrom. On all the evidence, the court found that the policy as originally issued was limited to the Los Angeles job. It further found that appellants did not ask for, and Hinman did not agree to furnish, coverage for anything except the Los Angeles job. It would be hypertechnical to remand this case for retrial as to the second count, when the determinative fact issues of that count have, on the fullest evidence, been resolved against appellants upon the other counts. Thus the

error does not warrant reversal. (Cal. Const., art. VI, § 4½; *Taylor* v. *Pacific Elec. Ry. Co.*, 172 Cal. 638, 645 [158 P. 119]; *Jones* v. *Bullard*, 83 Cal.App. 179 [256 P. 555].)

Respondent Harms deducted from its payments to appellants $2.11 per $100 of payroll, as payment for workmen's compensation insurance. In fact, Harms paid to Argonaut but $1.41 for each $100 of payroll on the Los Angeles airport job. Appellants do not appear to argue that the difference between the amounts charged and paid by Harms is recoverable by them, but refer to this transaction as a "badge of fraud" in their attack upon the findings generally. Assuming, however, that appellants seek recovery of the net difference of slightly more than $2,000, their claim must fail. The trial court found that the rate charged appellants was that "properly chargeable . . . according to the rates provided for by law," and that the lesser rate paid by Harms was the result of a "special rate" earned by it upon all its operations in the state over a period of three years preceding this job. There was testimony that workmen's compensation losses on this job exceeded the premiums charged by Harms to appellants, and that Harms' "special rate" on its other work would be higher for some time after completion of this job by reason of this experience. The court also found that Harms acted in good faith. These findings are supported by substantial evidence, and negative appellants' claim based wholly upon the charge of fraud.

Appellants urge that they are entitled to recovery, under the fourth and fifth counts of their complaint, for the sum of $6,313.58, the total amount deducted by Harms for payments to appellants on account of workmen's compensation insurance coverage. This claim is based upon the theory that no compensation coverage was in fact afforded to appellants. As already pointed out, all workmen's compensation claims in fact were paid. Thus, even if the Harms policy technically did not inure to the benefit of appellants, still all the practical benefits of coverage were furnished. Appellants seek to retain the benefits of the arrangement, and at the same time to recover the premiums paid therefor. Another and more direct answer to these claims of appellants is that they are barred by Business and Professions Code, section 7031. Plaintiffs were not licensed contractors during any part of the period of their subcontract. Thus they can, under the above code section, maintain no action for the collection of compensation for work done under the subcontract. (*Lewis & Queen*

v. *N. M. Ball Sons,* 48 Cal.2d 141 [308 P.2d 713].) In their fourth and fifth counts, they claim underpayment on their subcontract by reason of improper deductions by Harms from the sums due thereunder. It follows that these counts seek compensation for work performed by them as subcontractors, and thus are actions which appellants cannot maintain.

The remaining points raised by appellants' brief either are based upon appellants' own view of the evidence, contrary to the supported findings of the trial court, or are irrelevant in view of the foregoing determination of issues of law. None warrant detailed discussion, which would but unnecessarily extend this already long opinion. On the whole record we are satisfied that appellants failed to establish fraud and conspiracy, elements which are the essence of their complaint. We find no reversible error.

The judgment is affirmed. The purported appeal from the order denying new trial is dismissed.

Kaufman, P. J., and Dooling, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 23, 1957. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.