Filed 11/20/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| COUNTY OF LOS ANGELES, | B266037 |
| Petitioner, | (Los Angeles County Super. Ct. No. BS151389) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| CYNTHIA ANDERSON-BARKER, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS; petition for writ of mandate. Joanne O'Donnell, Judge. Petition granted.

Lawrence Beach Allen & Choi, Jin S. Choi, Oscar A. Bustos, for Petitioner.

No appearance by Respondent.

Donald W. Cook for Real Party in Interest.

_____

Petitioner County of Los Angeles (the County) seeks extraordinary writ relief to compel respondent court to vacate its order granting real party in interest Cynthia Anderson-Barker's petition for writ of mandate, brought pursuant to the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.).[1]  Respondent court ordered the County to disclose without any redaction all electronically stored CHP 180 forms in the possession of the Los Angeles County Sheriff's Department from January 1, 2012, to the present.  The County contends respondent court erred in finding inapplicable the exemptions found in section 6254 and 6255 of the CPRA.  Because we conclude that the CHP 180 forms as requested are exempt from disclosure under section 6254, subdivision (k) as a matter of law, we direct respondent court to set aside its order and enter a new order denying Anderson-Barker's petition for writ of mandate.

## STATEMENT OF FACTS

A CHP 180 form is used by the Sheriff's Department to document when a vehicle is towed to be stored or impounded, effectively removing it from the owner's control and temporarily depriving the owner of possession.  The Sheriff's manual dictates that a deputy sheriff must fill out a CHP 180 form to document a stored or impounded vehicle.  A CHP 180 form is not completed if the vehicle is towed or otherwise moved to a safe location or legally parked and secured in close proximity, by or with the consent of the owner.

The deputy sheriff is responsible for preparing an original and carbon copy of a CHP 180 form, giving the carbon copy to the garage/tow truck operator.  The completed CHP 180 form is imaged into the Sheriff's Electronic Criminal Documents Archive (SECDA) System, and sufficient copies are made for the Sheriff's station's needs.  The

---

[1] All further statutory references are to the Government Code, unless otherwise stated.

2

carbon copy given to the garage/tow truck operator includes, but is not limited to the following information: vehicle identification; registered and legal owner(s) and their address(es); the statutory towing authority; a checklist pertaining to the vehicle's condition; a short narrative indicating the reason for the tow along with other pertinent information; a list of items inventoried inside the vehicle if applicable; and notes pertaining to the release conditions of the vehicle if applicable. The name(s) and address(es) of a vehicle's registered and legal owner(s) are obtained from either the registration paperwork or a registration check of the vehicle with the Department of Motor Vehicles (DMV) database through the California Law Enforcement Telecommunications System (CLETS).

When the vehicle is stored at the garage/towing company, a notification report of the storage is mailed or personally delivered to the registered and legal owners. If the vehicle has been impounded under Vehicle Code section 14602.6, the notice will be sent by certified mail to the legal owner of the vehicle. The notice will include the following information: name, address, and telephone number of the agency providing the notice; the authority and purpose of the removal of the vehicle; the location of the place of storage/impound and description of the vehicle; how the vehicle may be obtained; and a Notification of Stored Vehicle form (Veh. Code, § 22852), which includes "a statement that informs the recipient of the opportunity for a post storage/impound hearing to specifically address/determine the validity of the storage/impound." This notification report will be made using the information from the CHP 180 form.

## PROCEDURAL HISTORY

Anderson-Barker's attorney, Donald W. Cook, has sued various California law enforcement agencies over their respective practices of impounding vehicles under Vehicle Code section 14602.6. On July 19, 2014, Anderson-Barker sent a written request to the County to disclose all electronically stored CHP 180 forms dating from January 1,

3

2012, to the present, pursuant to the CPRA. Anderson-Barker's request stated, "That includes, *but is not limited to*, CHP 180 forms imaged into the electronic archive SECDA."[2] The County responded that "several fields in the CHP 180 forms contain private information protected under California law, which information is exempt from disclosure." The County further stated "private information cannot be electronically redacted from the forms; each record would require manual redaction." The Sheriff's Department estimated that 215,000 of the CHP 180 forms were generated by all the Sheriff's stations throughout the County during the relevant time period and that it would take 71,666 hours to manually redact the records. The County concluded that Anderson-Barker's request was unreasonably overbroad and burdensome. In a letter, Anderson-Barker argued that the CHP 180 forms are not privileged because all of the data was provided to private parties, such as tow truck operators, vehicle owners, vehicle drivers, and others pursuant to the Sheriff's Department manual. The County replied that the parties who receive the CHP 180 form "are persons who have an interest in the vehicle, and therefore, are persons legally permitted to receive the information (i.e., vehicle owners, vehicle drivers, their attorneys, their insurance carriers, and tow truck drivers) in order to perform their respective duties."

After the County refused to produce the CHP 180 forms, Anderson-Barker filed a verified petition for writ of mandate on October 6, 2014, seeking to compel disclosure "[a]s stored electronically (whether as data or image files), all completed CHP 180 forms, from January 1, 2012 to the present, including but not limited to, CHP 180 forms imaged into the electronic archive SECDA." On October 31, 2014, the County filed an answer to

---

[2] Anderson-Barker also requested that the County make available two additional items: (1) "All Sheriff's Department Station Daily Logs, from January 1, 2012 to present"; and (2) "All data taken from a Patrol Station Daily Log and electronically stored, for activities from January 1, 2012 to the present." On January 28, 2015, the County filed a notice of partial settlement stating that the parties settled these two issues and the CHP 180 forms remained the only item in dispute.

4

the petition. Anderson-Barker subsequently filed a brief in support of her petition and the County filed an opposition memorandum of points and authorities.

On July 22, 2015, respondent court held a hearing on the writ petition. After argument, the court granted the petition and issued a writ compelling the County to comply with Anderson-Barker's request for production of all electronically stored CHP 180 forms from January 1, 2012, to the present. The court reasoned in part that contrary to the County's contention, the CHP 180 forms are not exempt under section 6254, subdivision (k), which prevents disclosure of records that are prohibited under federal or state law. Because the CHP 180 forms are not exempt from disclosure, the court held redaction is not required. The court ordered that the County produce the requested records within 60 days. Anderson-Barker filed a notice of ruling and entry of order on July 27, 2015.

On August 11, 2015, the County filed a petition for writ of mandate with this court seeking relief from respondent court's July 22, 2015 order. On September 4, 2015, we issued an alternative writ directing respondent court to vacate its order and enter a new and different order denying Anderson-Barker's petition for writ of mandate compelling disclosure, or show cause why a peremptory writ should not issue. Pending a determination of the merits of the petition or further order by this court, respondent court's July 22, 2015 order compelling disclosure was stayed. Respondent court elected not to comply with the alternative writ.

## DISCUSSION

**Standard of Review**

"A superior court order directing disclosure of public records held by a public agency 'is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately

5

reviewable by petition to the appellate court for the issuance of an extraordinary writ.' (§ 6259, subd. (c); *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 115.) Appellate review of the order is 'independent on issues of law, and follows the substantial evidence test with respect to any issues of fact. [Citation.]' (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1416 [].)" (*County of Los Angeles v. Superior Court* (*Axelrad*) (2000) 82 Cal.App.4th 819, 824 (*Axelrad*).)

**The California Public Records Act**

In 1968, the Legislature enacted the CPRA "for the explicit purpose of 'increasing freedom of information' by giving the public 'access to information in possession of public agencies.'" (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651.) The CPRA was modeled on its federal predecessor, the Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.). (*Axelrad, supra,* 82 Cal.App.4th at p. 825.) The Legislature declared "that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) Absent an express exemption, the CPRA provides that "every person" has a right to inspect any "public record" maintained by a "state or local agency." (§ 6253, subd. (a).) The County is a local agency under the CPRA (§ 6252, subd. (a)), and there is no dispute that the records at issue in this writ proceeding qualify as public records (§ 6252, subd. (e) ["'[p]ublic records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics"].) The CPRA must be construed broadly as it furthers the people's right of access. (Cal. Const., art. I, § 3, subd. (b)(2) [a "statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access"].)

Nevertheless, "[t]he right of access to public records under the CPRA is not absolute. In enacting the CPRA, the Legislature, although recognizing this right, also expressly declared that it was 'mindful of the right of individuals to privacy.' (Gov. Code, § 6250.) Thus, the express policy declaration at the beginning of the [CPRA] 'bespeaks legislative concern for individual privacy as well as disclosure.' (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 652 (*Kehoe*).) 'In the spirit of this declaration, judicial decisions interpreting the [CPRA] seek to balance the public right to access to information, the government's need, or lack of need, to preserve confidentiality, and the individual's right to privacy. [Citations.]' (*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 447.)" (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282 (*Copley*).)

"'The same dual concern' for privacy and disclosure the Legislature stated in Government Code section 6250 'appears throughout the [CPRA].' (*Kehoe, supra,* 42 Cal.App.3d at p. 652.) . . . Government Code section 6253, subdivision (a), provides for the inspection of public records 'except as hereafter provided.' In the provisions that follow, the [CPRA] states a number of exemptions that permit government agencies to refuse to disclose certain public records. (Gov. Code, §§ 6254-6255.) 'In large part, these exemptions are designed to protect the privacy of persons whose data or documents come into governmental possession.' (*Kehoe, supra,* 42 Cal.App.3d at p. 652.)" (*Copley, supra,* 39 Cal.4th at p. 1282.) "Exemptions under the CPRA 'are to be narrowly construed [citation], and the government agency opposing disclosure bears the burden of proving that one or more apply in a particular case.' [Citations.]" (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 63-64.)

### State Law Exemption

Section 6254, subdivision (k) exempts disclosure of "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law." "As is evident from

7

the statutory language, this exemption 'is not an independent exemption. It merely incorporates other prohibitions established by law. [Citations.]' (*CBS, Inc. v. Block*[, *supra,*] 42 Cal.3d [at p.] 656.) In 1998, the Legislature added an article to the CPRA specifically 'list[ing] and describ[ing]' over 500 statutes that provide disclosure exemptions through Government Code section 6254, subdivision (k). (Gov. Code, § 6275; see also *id.,* §§ 6276-6276.48.)" (*Copley, supra,* 39 Cal.4th at p. 1283.) Among the listed statutes are section 6254.1 of the Government Code and section 1808.21 of the Vehicle Code. (§ 6276.38.) "The statutes and constitutional provisions listed and described may not be inclusive of all exemptions." (§ 6275; see § 6276.)

The Legislature passed a series of statutes to protect the confidentiality of DMV records over 20 years after the CPRA was enacted, which include section 6254.1 of the Government Code and section 1808.21 of the Vehicle Code. (Stats. 1989, ch. 1213, § 3, p. 4714; Stats. 1989, ch. 1213, § 5, p. 4715.) Prior to their enactment, existing California law permitted the DMV to release a person's complete driving record, including his or her home address. The Legislature made the following findings and declarations: "(a) Section 1 of Article I of the California Constitution guarantees the right to privacy. [¶] (b) In order for individuals to be able to exercise their right to privacy, they must be able to choose when to release personal information, and to whom, and reasonable laws requiring the individual to surrender control should be enacted only when it is deemed absolutely necessary for society's welfare. [¶] (c) The personal privacy and security of one's home is fundamental to this right of privacy. [¶] (d) In order to protect individuals from unwanted invasions of their homes, the Legislature has enacted this act." (Stats. 1989, ch. 1213, § 1, p. 4713.)

Section 6254.1 was later added as part of the CPRA and states, "Nothing in this chapter requires the disclosure of the residence or mailing address of any person in any record of the [DMV] except in accordance with Section 1808.21 of the Vehicle Code." (§ 6254.1, subd. (b).) Vehicle Code section 1808.21 was enacted to protect the confidentiality of the residential addresses and limit the purposes for which individuals

could obtain mailing address information. Vehicle Code section 1808.21, subdivision (a), states that "[a]ny residence address in any record of the [DMV] is confidential and shall not be disclosed to any person, except a court, law enforcement agency, or other government agency, or as authorized in [Vehicle Code] Section 1808.22 or 1808.23."[3] Subdivision (b) of Vehicle Code section 1808.21 states in pertinent part: "Release of any mailing addresses or part thereof in any record of the [DMV] may be restricted to a release for purposes related to the reasons for which the information was collected, including, but not limited to . . . ownership of vehicles or vessels. This restriction does not apply to a release to a court, a law enforcement agency, or other governmental agency . . . ." "The willful, unauthorized disclosure of information from any [DMV] record to any person . . . is a misdemeanor, punishable by fine not exceeding five thousand dollars ($5,000) or by imprisonment in the county jail not exceeding one year, or both fine and imprisonment." (Veh. Code, § 1808.45.)

The CHP 180 forms fall under the section 6254, subdivision (k) exemption because both section 6254.1 of the Government Code and section 1808.21 of the Vehicle Code prohibit disclosure of a vehicle owner's address retrieved from DMV records. Vehicle Code section 1808.21 allows for a DMV record to be disclosed to a "law enforcement agency," such as the Sheriff's Department in this case. When the deputy sheriff fills out a CHP 180 form when storing or impounding a vehicle, he or she retrieves the names of the registered and legal owners and their addresses from either the registration paperwork or a registration check of the vehicle with the DMV database through CLETS. Because this personal information originated from DMV records and was retrieved by an statutorily authorized agency, each CHP 180 form remains protected from nondisclosure under Vehicle Code section 1808.21 and therefore also within the protection of section 6254.1 of the CPRA.

---

[3] Vehicle Code sections 1808.22 and 1808.23 contain exceptions to the prohibition on disclosure for financial institutions, insurance companies, attorneys, vehicle manufacturers, auto dealers, and persons engaged in statistical research.

Anderson-Barker concedes that Vehicle Code section 1808.21, subdivision (a) prohibits disclosure of a *residence address* of any person registering a vehicle. However, she contends Vehicle Code section 1808.21, subdivision (b) merely authorizes the DMV to restrict dissemination of *mailing addresses* and that those addresses are therefore not confidential.[4] The DMV's Application for Title or Registration form requires specific information about the vehicle and registered owner, including the "physical residence or business address" and "mailing address" if different from the physical address. Anderson-Barker asserts that to the extent she seeks residence addresses that are the same as mailing addresses, subdivision (b) of section 1808.21 allows disclosure. This is a misreading of section 1808.21 of the Vehicle Code. First, nothing in section 1808.21, subdivision (b) suggests it modifies subdivision (a). Subdivision (a) specifically prohibits the release of residence addresses. (See Cal. Code Regs., tit. 13, § 350.03.) Independently, subdivision (b) provides that the release of a mailing address may be restricted to use of the mailing address for reasons related to the purpose for which the DMV collected the information. (See Cal. Code Regs., tit. 13, § 350.36, subd. (a)(6).) Second, if a vehicle owner elects to provide a mailing address different from the residence address on the registration form, it is unclear from the record which address the deputy sheriff records on the CHP 180 form. Therefore, it is unknown whether the address on each CHP 180 form falls under subdivision (a) or (b) of Vehicle Code section 1808.21.

Despite this ambiguity and assuming some vehicle owners opt to have an alternative mailing address that is then used on the CHP 180 form, we conclude it is restricted from disclosure under subdivision (b) of section 1808.21 of the Vehicle Code. Disclosure of the mailing address in a DMV record may be restricted to a release for a purpose related to the reasons for which the information was collected. The DMV requires an owner to provide the residence address and possibly a different mailing

---

[4] Anderson-Barker did not raise this argument in the trial court.

10

address in order to register his or her vehicle. Here, the Sheriff's Department in turn retrieved the address for the CHP 180 form to identify the owner of the impounded or stored vehicle. Anderson-Barker's reason for the CPRA request for the CHP 180 forms does not relate to identifying ownership of a stored or impounded vehicle. On the contrary, the request for the CHP 180 forms solely focuses on evaluating the Sheriff's Department practices on impounding vehicles in violation of Vehicle Code section 14602.6, subdivision (a)(1). We hold that the addresses are prohibited from disclosure under both Vehicle Code section 1808.21 subdivision (a) and (b).

### *Waiver*

Anderson-Barker argues the County admitted that it routinely discloses vehicle owners' addresses as recorded on the CHP 180 forms to two classes of persons not authorized to receive the information, tow companies and vehicle drivers who are not the vehicle owner. Consequently, she contends the County is precluded from now asserting Vehicle 1808.21 bars disclosure of the same information the County has freely given to others. We disagree.

Exemptions can be waived. (§ 6254.5; *County of Los Angeles v. Superior Court* (2005) 130 Cal.App.4th 1099, 1107.) Section 6254.5 states: "Notwithstanding any other provisions of law, whenever a state or local agency discloses a public record which is otherwise exempt from this chapter, to any member of the public, this disclosure shall constitute a waiver of the exemptions specified in Sections 6254, 6254.7, or other similar provisions of law. For purposes of this section, 'agency' includes a member, agent, officer, or employee of the agency acting within the scope of his or her membership, agency, office, or employment." Section 6254.5 does not apply to disclosure "[m]ade through other legal proceedings or as *otherwise required by law*." (§ 6254.5, subd. (b), italics added.)

11

Anderson-Barker misinterprets the Sheriff Department's manual regarding notification reports of a stored or impounded vehicle. According to the manual, information from the CHP 180 form, including the name(s) of the legal and registered owner(s) and their address(es), is used to send out the notification reports to "be mailed or personally delivered to the registered and legal owners." Nothing in the manual suggests that the notification is sent to the driver of the vehicle, who is neither a registered or legal owner. Additionally, there is no logical way for the Sheriff's Department to send a notification to a driver who is not the owner of the vehicle because their information would not be available through a vehicle search in the DMV database. Thus, the only issue before us is whether the County waived confidentiality of the CHP 180 forms by disclosing the addresses to tow companies.

Towing companies tow disabled and abandoned vehicles from public highways, and when the vehicles are impounded, the towing company obtains a lien on the vehicle for the towing, storage, and labor costs incurred. (Civ. Code, § 3068.1, subd. (a)(1).) Before the vehicle may be sold to satisfy this lien, the towing company (as lienholder) must provide notice to its registered and legal owner by certified mail. (Civ. Code, §§ 3071, subd. (b)(2), 3072, subd. (b); Veh. Code, § 22851.8, subd. (b).) Therefore, towing companies as lienholders are entitled to addresses from the DMV to perform their statutory duty to provide this notice to owners of impounded or stored vehicles. If the address of such persons are unknown by the tow company and only the residence or alternative mailing address is on record with the DMV, the tow company would be prevented from complying with its statutory duty unless the those addresses are disclosed to the company. In the instant case, the disclosure of addresses to tow companies facilitates the statutory requirement of notice to registered and legal owners of a vehicle. Anderson-Barker made the CPRA request for the CHP 180 forms based on alleged constitutional violations occurring in connection with the 30-day vehicle impound statute (Veh. Code, §14602.6). Vehicle Code section 14602.6, subdivision (a)(2) provides in pertinent part that "[t]he impounding agency, within two working days of impoundment,

12

shall send a notice by certified mail . . . *to the legal owner of the vehicle, at the address*

*obtained from the* [*DMV*], informing the owner that the vehicle has been impounded."

(Italics added.)  We conclude that disclosure of a vehicle owner's address(es) to tow

companies does not constitute a waiver under section 6254.5 as it is required by law.  The

County has therefore not waived any claim of confidentiality over the addresses recorded

in the CHP 180 forms.


**The Driver's Privacy Protection Act**


We agree with Anderson-Barker that subject to a specific provision of law

prohibiting disclosure, all DMV records are open to public inspection under Vehicle

Code section 1808, subdivision (a).  However, Anderson-Barker overlooks subdivision

(e) of Vehicle Code section 1808 that states the DMV "shall not make available or

disclose personal information about a person unless the disclosure is in compliance with

the Driver's Privacy Protection Act of 1994 [(DPPA)] (18 U.S.C. § 2721 et seq.)."  (Veh.

Code, § 1808, subd. (e).)  Consequently, disclosure of any personal information from a

state DMV record is dependent on the provisions of the DPPA.

Congress enacted the DPPA out of concern that state DMVs were releasing and

even selling a vehicle owner's personal information, resulting in the loss of privacy for

many individuals.  (*Maracich v. Spears* (2013) 133 S.Ct. 2191, 2195.)[5]  The DPPA is a

federal "regulatory scheme that restricts the States' ability to disclose a driver's personal

information without the driver's consent."  (*Reno v. Condon* (2000) 528 U.S. 141, 144.)

The DPPA generally prohibits a state DMV, "and any officer, employee, or contractor

thereof" from knowingly disclosing or otherwise making available an individual's

---

[5] The DPPA was enacted to specifically respond to two concerns:  (1) "a growing threat from stalkers and criminals who could acquire personal information from state DMVs"; and (2) "the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation."  (*Maracich v. Spears*, *supra*, 133 S.Ct. at p. 2198.)

personal information obtained by the DMV in connection with a motor vehicle record. (18 U.S.C. § 2721(a)(1).) The DPPA defines personal information as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . ." (18 U.S.C. § 2725(3).) The penalty for noncompliance with the DPPA is a civil penalty of up to $5,000 a day for each day of substantial noncompliance, as well as criminal fines and possible liability in private causes of action by the drivers personally. (See 18 U.S.C. §§ 2722-2724.)

Like the CPRA, "[t]he DPPA's prohibition of nonconsensual disclosures is also subject to a number of statutory exceptions." (*Reno v. Condon, supra,* 528 U.S. at p. 145.) The state DMV may release personal information for any one of these permitted purposes, but it is not obligated to do so. Disclosure is permitted for use "by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." (18 U.S.C. § 2721(b)(1).) The DPPA also allows States to divulge personal information to notify vehicle owners that their vehicle has been towed or impounded (18 U.S.C. § 2721(b)(7)), and for any state-authorized purpose relating to the operation of a motor vehicle or public safety (18 U.S.C. § 2721(b)(14)). Private persons who have obtained drivers' personal information for any one of the aforementioned permissible purposes may only further disclose that information for a listed purpose. (18 U.S.C. § 2721(c).)

The personal information contained in the CHP 180 forms is the exact type of information defined in the federal statute. Unless provided for in one of the exceptions, the DPPA requires a state DMV to obtain the license holder's express consent before permitting the disclosure of any personal information. (18 U.S.C. § 2721(b)(11).) To permit disclosure of personal information encompassed in the CHP 180 forms, without express consent by the vehicle owner, would ignore the plain language of the DPPA. On the other hand, the State of California DMV is permitted to disclose personal information

14

to the Los Angeles County Sheriff's Department as it is a law enforcement agency that is using this information to record and then later notify vehicle owners about their impounded or seized vehicles. The DPPA, like the California Vehicle Code, also provides for disclosure to tow companies in order to notify vehicle owners. We conclude that the CHP 180 forms fall squarely within the section 6254, subdivision (k) exemption, as disclosure of any personal information obtained from DMV records, without express consent from the vehicle owner, is prohibited by federal law under the DPPA.

**Redaction**

Anderson-Barker contends that if the addresses are exempt from disclosure, respondent court's order compelling production of the CHP 180 forms "can be modified to limit the scope of disclosure via redaction of, at most, vehicle owners' addresses and possible names." The County responds that redacting 215,000 CHP 180 forms would be time-consuming and overly burdensome.

The County's petition for writ of mandate sought relief to compel respondent court to "(a) set aside its order granting the petition for writ of mandate below and a new and different order in Petitioner's favor; or (b) to show cause why it should not be ordered to do so; and [¶] . . . Grant such other and further relief as it may deem just and proper."

In general, the court may grant relief that is not requested if it is "encompassed" within the issues raised by the petition. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218, fn. 9 [trial court could issue writ compelling trustees to adopt certain regulations even if petition for writ of mandate did not specifically request such relief, because "[a] court may grant 'any relief consistent with the case made by the complaint and embraced within the issue'"]; *Lee v. Blue Shield of California* (2007) 154 Cal.App.4th 1369, 1378 ["Regardless of how a pleading is labeled or a prayer is framed, '[a] court may grant any relief consistent with the case made by the petitioner and embraced within the issue'"].) Conversely, a court may not grant relief

15

that is not encompassed within the issues framed by the pleadings.  (See, e.g., *Marvin v. Marvin* (1981) 122 Cal.App.3d 871, 875 [where complaint asked only that the defendant pay the plaintiff a reasonable sum per month for support and maintenance, the court could not award the plaintiff a sum for "rehabilitation" to help her learn new employable skills].)

The County did not ask this court to redact any portion of the CHP 180 forms that are exempt by law.  Rather it expressly argued at length against redacting any exempt information because it would be overly burdensome and time-consuming to redact 215,000 CHP 180 forms.  Although the County asked this court to grant relief as we "deem just and proper," we hold that redaction is not encompassed within the prayer for relief set out in the County's petition for writ of mandate.

## DISPOSITION

The alternative writ is discharged and the stay previously imposed is lifted.  A peremptory writ shall issue directing respondent court to vacate its July 22, 2015 order compelling production of all electronically stored CHP 180 forms from January 1, 2012, to the present, and enter a new order denying real party in interest Anderson-Barker's petition for writ of mandate.  Costs are awarded to petitioner County of Los Angeles.


KRIEGLER, J.


We concur:



MOSK, Acting P. J.


16

BAKER, J.